1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RUNGPHET O. BUAPHA,  )
                                                 )
                             Plaintiff,  )          Case No.  2:15-cv-01870-JAD-GWF
                                                 )
vs.                                          )          **FINDINGS & RECOMMENDATIONS**
                                                 )
NANCY A. BERRYHILL, Acting Commissioner  )
of Social Security,                    )
                                                 )
                             Defendant.  )
_____)

This matter is before the Court on Plaintiff's Motion for Reversal and/or Remand to the Social Security Administration (ECF No. 21), filed on July 26, 2016.  Defendant filed her Cross-Motion for Affirmance of the Commissioner's Decision and Opposition to Plaintiff's Motion for Reversal (ECF No. 25) on September 23, 2016.  Plaintiff filed her Reply (ECF No. 26) on October 13, 2016.

## BACKGROUND

### A.    Procedural History

On April 24, 2012, Plaintiff filed an application for a period of disability, disability insurance benefits, as well as an application for supplemental security income.  *See Administrative Record* ("AR") 160, 167.  The Commissioner denied Plaintiff's application initially on September 12, 2012 and upon reconsideration on June 5, 2013.  AR 52, 76, 92.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 109.  A hearing was conducted on April 30, 2014 before the ALJ.  AR 27-42.  Plaintiff and a vocational expert, Robin Generaux, appeared and testified at the hearing.  The ALJ found that Plaintiff acquired sufficient quarters of coverage to remain insured through December 31, 2016 and, thus, had to establish disability on or before December 31, 2016 to be entitled to a period of disability.  On June 26, 2014, the ALJ concluded that Plaintiff was not disabled

as defined in the Social Security Act from January 1, 2012 to the date of the decision. AR 21. Plaintiff filed her request for review of the ALJ's decision on August 22, 2014. AR 7. The Social Security Administration Appeals Council denied Plaintiff's request for review on August 5, 2015 and Plaintiff filed this action for judicial review.

**B.    Factual Background**

**1.    Plaintiff's Disability/Work History Reports and Hearing Testimony**

Plaintiff was born on November 8, 1961 and was 52 years old at the time of the April 30, 2014 hearing. AR 160. She is 5'4" tall and weighed 127 pounds in April 2014. She completed her schooling in Thailand. AR 32. Plaintiff testified that she could not read in English and could only write some in English. From 1991 to 2011, Plaintiff worked as a housekeeper for a hotel and casino. AR 34, 198. Plaintiff stopped working at the end of January 2011. As a housekeeper, Plaintiff walked 7 hours a day, stood 1 hour a day, lifted beds, lifted towels and sheets, and pushed a cleaning cart. AR 209. The heaviest weight she lifted was 20 pounds and she frequently lifted less than 10 pounds.

Plaintiff listed back problems, lumbar disectomy, pain in arms, and pain in legs as physical conditions limiting her ability to work in her disability report. AR 197. When asked if she experienced any change in her condition, Plaintiff stated that she has problems with her neck, pain in both of her arms, and shoulder pain. AR 219, 228. She testified that she has had two back surgeries, the first in 2008 after which she continued working, and the second in January of 2011, after which she ceased working due to her pain and her doctor's orders. AR 34. Plaintiff stated that she could not stand longer than 1 hour because she started to feel back pain, that she can't lift any heavy objects, and that she feels pain even when she sits down. AR 228. Plaintiff stated at the April 30, 2014 hearing that she could sit comfortably in a soft chair for an hour until she would need to move and take a walk or lay down. AR 36. She felt sharp pain in her low back, neck, legs, and arms. She took Levistor, Presta, and Ibuprofen and Tramadol pain medication. AR 248, 38. Plaintiff testified that the pain medication upset her stomach. AR 38. Plaintiff testified that she resided with her sister. AR 37. Her mother and sister did the grocery shopping and cooking. Plaintiff watched her nephew by "keep[ing] an eye" on him. AR 38. She would sometimes visit with friends.

. . .

**2.    Vocational Expert's Testimony**

Vocational expert ("VE") Robin Generaux testified at the April 30, 2014 hearing.  The ALJ asked the VE the following hypothetical question:

> [L]et's assume you had a hypothetical woman who had at least – well, at least a high school education. And the same work history as the Claimant, with a combination of physical impairments that would result in limiting her to light work, as defined by the DOT and the Social Security regulations, with occasional climbing of stairs or ramps, and no climbing of ladders, ropes or scaffolds, frequent balancing, occasional stooping. Occasional kneeling, occasional crouching. No crawling. Well, if those were the limitations would that hypothetical woman be able to do any of the Claimant's past work?

AR 40.

The VE responded that the hypothetical woman would be able to perform Plaintiff's past work as a housekeeper.  The ALJ asked the VE if there would be transferrable skills if Plaintiff was limited to sedentary work.  The VE testified that there would be no transferrable skills in that circumstance. Plaintiff's counsel asked if an individual could do light work if she could only stand or walk for two out of the eight hour work day.  The VE replied that she could not.  Plaintiff's counsel asked if sedentary jobs would be eliminated if an individual had to shift positions at will every 15 minutes for around 10 minutes.  The VE indicated that they would be eliminated.  AR 40-41.  Plaintiff's counsel asked if all employment would be eliminated if an individual was off task 25 percent of the time and the VE stated that it would.

**3.    Medical Records**

Plaintiff underwent a surgical procedure in 2008 performed by William S. Muir, M.D., for her low back pain that was completed without complications.  Plaintiff returned to work three months after the surgery.  She again presented to Dr. Muir and underwent a posterior fusion procedure of the lumbar spine in September 2011.  AR 351, 338.  During her post-operative follow-up on October 11, 2011, Plaintiff reported overall improvement of her preoperative status and resolution of her radiculopathy. AR 607.  She was no longer using narcotic pain medicine on November 22, 2011 and improved considerably.  AR 602.  She reported that she had continued intermittent low back and lower extremity symptoms as well as continued upper extremity pain on March 27, 2012.  AR 587.

Upon examination in June 2012, she had 80% of lumbar spine motion with back pain

1   complaints but no neurological deficit. An MRI of the cervical spine was obtained on August 9, 2012.

2   AR 393. There was cervical straightening which could represent spasm. The C2-3 disc demonstrated a

3   posterior bulge with annular tear and the C3-4 disc demonstrated a posterior protrusion with annular

4   tear. The C4-5 disc was narrowed and desiccated, and demonstrated a posterior protrusion with annular

5   tear. There was bilteral foraminal narrowing. The C5-6 disc demonstrated moderate right

6   encroachment.

7       Gary LaTourette, M.D., treated Plaintiff from February 25, 2003 to November 2, 2012. He

8   performed a PRP injection in her left medial epicondyle and left elbow on January 10, 2011. AR 491.

9   In a March 7, 2011 progress note, Dr. LaTourette noted that a June 2010 MRI of the cervical spine

10  showed straightening, C3-4 intervertebral disc bulge, and C4-5 intervertebral disc bulge. He stated that

11  Plaintiff received numerous injections that did not help and he, therefore, did not believe she needed

12  more injections. AR 498. In a May 3, 2011 progress note, he noted that a MRI showed supraspinatus

13  tendinosis and mild common flexor tendinosis with fissuring. AR 503. He referred Plaintiff to physical

14  therapy on March 7, 2011. AR 498. She experienced left shoulder and elbow pain that was alleviated

15  with physical therapy. AR 505. Plaintiff received pain medication and Dr. LaTourette noted that she

16  experienced drowsiness and nausea from Lortab. AR 509. Dr. LaTourette stated that Plaintiff was able

17  to sit for 10 minutes and stand for 15 minutes before needing to get up, sit down, or walk around. He

18  also indicated that Plaintiff could only sit and stand/walk for less than 2 hours in an 8 hour work day.

19  AR 510. He stated that she could never reach overhead. Dr. LaTourette indicated that Plaintiff would

20  need to take 2 to 3 unscheduled breaks for 20 minutes during a work day, that she could occasionally

21  lift less than 10 pounds, rarely lift 10 pounds, never lift or stoop, rarely crouch or climb stairs, and

22  never climb ladders. AR 511.

23      Plaintiff was seen by Lianne Ong, M.D., of Cathay Medical Center on March 8, 2011. Dr. Ong

24  reported on October 2, 2012 that Plaintiff had a significant abnormality in her C-spine and that a recent

25  MRI showed cord compression at C5-6 as well as other degenerative changes in the remaining disks in

26  her neck. AR 513. She noted that Plaintiff had already undergone a lumbar laminectomy in September

27  2011. Dr. Ong assessed that Plaintiff had cervical radiculopathy and cervical disc degeneration. AR

28  382. On December 15, 2013, Plaintiff reported having neck pain with upper extremities tingling

4

sensation and no weakness.  AR 685.

Plaintiff was examined by Jerrold M. Sherman, M.D., at the request of the Bureau of Disability Adjudication on August 16, 2012 for neck and low back pain.  Plaintiff told Dr. Sherman that her neck pain worsened with any pushing, pulling, or lifting of five pounds and she claimed painful limited neck motion.  She had low back pain of a constant aching nature that worsened with standing for more than 30 minutes and lifting weights heavier than 10 pounds, but was not affected by walking, sitting, pushing, pulling, or coughing.  Plaintiff claimed painful limited back motion.  Upon examination, Plaintiff appeared to have a normal gait.  She could easily walk on her heels and toes and perform a normal squatting maneuver without difficulty.  She could gain the examining table easily but complained of back pain when sitting up from a lying position and pushed up with her hands while sitting up from a lying position.  Plaintiff complained of pain with any light touch all about the lumbar spine.  She had 100% normal range of motion of her neck and was without muscle spasm or tenderness around the cervical spine.  AR 352.

Dr. Sherman's impression was that Plaintiff had complaints of neck pain without neurological or mechanical deficit and complaints of low back pain with some limited motion but no neurological deficit.  AR 353.  He stated that Plaintiff was able to sit, stand, and walk for four hours during the course of an eight hour day and that she could frequently lift 10 pounds and occasionally 20 pounds. She could do occasional forward bending at the waist and had no restrictions regarding squatting, kneeling, reaching, pushing, grasping or fine manipulation activities with the hands, but she should not do frequent crawling or ladder climbing.  AR 354.

Plaintiff was seen by Brandon Harris, M.D., of the Southern Nevada Pain Center on November 28, 2012 for her neck and low back pain.  Dr. Harris assessed that Plaintiff had a displaced or inverted disc, radiculopathy, and postlaminectomy syndrome.  AR 359.  Plaintiff experienced pain with lumbar extension and flexion.  AR 366.  She underwent a right C5-6 cervical epidural steroid injection, epidurogram, and fluoroscopy on December 5, 2012.  AR 362.  During a follow-up visit on December 26, 2012, she stated that the injection didn't help at all.  AR 365.

Plaintiff appeared for a second consultative examination by Dr. Sherman on May 20, 2013.  Dr. Sherman noted that Plaintiff entered the examination room with a normal gait, and without using a cane

1    or brace.  She could easily walk on her heels and toes.  She could perform a normal squatting maneuver,

2    gain the examining table, and sit up from a lying position without difficulty.  AR 655.  Dr. Sherman's

3    impression was that she had complaints of neck pain without neurologic or mechanical deficit and

4    complaints of low back pain post lumbar fusion from L4 through the sacrum without neurologic deficit.

5    He stated that Plaintiff was able to sit, stand, and walk for 6 hours during the course of an 8 hour day

6    and did not require a cane, brace, or assistive device to ambulate.  She was able to frequently life 10

7    pounds and occasionally lift 20 pounds.  She was able to do occasional forward bending at the waist

8    and had no restrictions regarding reaching, pushing, pulling, grasping, or squatting.  AR 657.

9         **C.**     **Administrative Law Judge's Decision**

10        The ALJ applied the five-step sequential evaluation process established by the Social Security

11   Administration, 20 CFR 416.920(a), in determining whether Plaintiff was disabled.  AR 14-16.  The

12   ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through

13   December 31, 2016.  AR 13.  At step one, he found that Plaintiff had not engaged in substantial gainful

14   activity since July 1, 2012.  At step two, he found the following severe impairments: degenerative disc

15   disease of the cervical spine status post fusion, degenerative disc disease of the lumber spine status post

16   discectomy, and lumbar post laminectomy syndrome.  AR 15.  At step three, the ALJ found that

17   Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

18   severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

19   404.1520(d), 404.1525, 404.1526, 416.920, 416.925, 416.926).  AR 16.

20        Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform

21   light work as defined in 20 CFR 404.1567(b) and 416.967(b), with no crawling or climbing ladders,

22   ropes or scaffolds, occasional climbing ramps and stairs, stooping, kneeling, crouching, and frequent

23   balancing.  AR 16.  In arriving at this assessment, the ALJ found that Plaintiff's "medically

24   determinable impairments could reasonably be expected to cause some of the alleged symptoms," but

25   her statements concerning "the intensity, persistence and limiting effects of these symptoms are not

26   entirely credible."  AR 17.  He stated that the objective clinical findings did not support the degree of

27   pain and functional limitations alleged by Plaintiff.  He stated that a MRI on April 22, 2011 showed

28   "mild common flexor tendinosis with subtle intrasubstance fissuring and mild adjacent soft tissue

1  edema deep to surface [ ] marking area of clinical concern" and "very mild common extensor

2  tendinosis." AR 17.  He further stated that EMG studies performed on February 3, 2011 did not show

3  electrodiagnostic evidence for overt axonal loss C5 through T1 ridiculopathy bilaterally, for carpal

4  tunnel syndrome, for ulnar neuropathy at the elbow, or for axonal or demyelinating sensory peripheral

5  neuropathy.  He stated that Plaintiff's left shoulder improved with physical therapy.  AR 17.

6         The ALJ found that although Plaintiff's lumbar impairment had required surgery, the record

7  reflected that the surgeries were generally successful in relieving her symptoms.  He noted that she had

8  considerable improvement in 2012 and was no longer using narcotic pain medications, which

9  contradicted her allegations of quite limiting pain.  He further noted that she had improved functionality

10  and only intermittent pain with prolonged activities.  AR 17.  The ALJ stated that Dr. Sherman's

11  examination on August 6, 2012 revealed a 100% normal, pain-free range of motion of the neck, both

12  shoulders, elbows, wrists and small joints of the hands and fingers with normal grip strength and

13  sensation in both hands. AR 18.  Dr. Sherman opined that Plaintiff could sit, stand, and walk for 4

14  hours in an 8 hour work day, could frequently lift 10 pounds, and occasionally lift 20 pounds.

15         The ALJ reviewed Dr. LaTourette's November 2, 2012 physical medical source statement that

16  opined that Plaintiff could sit for less than 2 hours and stand or walk for less than 2 hours in an 8 hour

17  work day.  The ALJ stated that Dr. LaTourette's report was based entirely on Plaintiff's subjective

18  complaints and was grossly inconsistent with the totality of the evidence.  He noted that the evidence

19  showed that Plaintiff had no difficulty walking, that her gait was consistently described as normal, and

20  that she only had a slight decrease of range of motion fo her lumbar spine and cervical spine.  AR 18.

21  The ALJ afforded Dr. LaTourette's opinion no weight.  As further reasoning for rejecting Dr.

22  LaTourette's assessment, the ALJ stated as follows:

23         Dr. LaTourette also opined that claimant could never reach overhead or reach in front of
        her body (Exhibit 9f/60).  There was no objective evidence elicited during Dr.
24      Sherman's examination or in the medical evidence that would support a finding that the
        claimant had such extreme limitations in standing and walking, or that she had any
25      limitations on reaching.  Dr. LaTourette apparently relied quite heavily on the subjective
        report of symptoms and limitations provided by the claimant, and seemed to,
26      uncritically, accept as true most, if not all, of what the claimant reported.  Yet, as
        explained elsewhere in this decision, there exist good reasons for questioning the
27      reliability of the claimant's subjective complaints.  Furthermore, progess notes and the
        longitudinal report do not support Dr. LaTourette's opinion.  For all these reasons, I
28      cannot afford this opinion controlling weight, and afford it no weight, as it is neither

1   supported by, nor is it consistent with, the overall record.  (SSR 96-2p).

2   AR 18.

3       The ALJ also discussed the permanent 25 pound maximum lifting restriction indicated by Dr.

4   Muir.  He afforded Dr. Muir's opinion appropriate weight to the extent that it was consistent with

5   Plaintiff's residual functional capacity.  The ALJ, however, did not afford his opinion controlling

6   weight.  AR 18.  The ALJ considered, but granted little probative weight to Plaintiff's testimony stating

7   that the evidence did not support her allegations.  He stated that Plaintiff's activities of daily living in

8   conjunction with the medical evidence demonstrated minimal abnormalities and reflected a significant

9   functional capacity.  He afforded Dr. Sherman's 2013 opinion that Plaintiff could perform light work

10  great weight due to his examination, his specialty in orthopaedic medicine, and his diagnostic testing.

11  AR 19.

12      Based on his findings that Plaintiff had the residual functional capacity to perform light work,

13  the ALJ found at step four that she was capable of performing her past relevant work as a housekeeper.

14  AR 20.  The ALJ, therefore, concluded that Plaintiff was not disabled from January 1, 2012 through the

15  date of his decision on June 26, 2014.  AR 21.

## DISCUSSION

### I.    Standard of Review

18      A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's

19  findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal

20  standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996);  *Delorme v. Sullivan,* 924 F.2d 841,

21  846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla

22  but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

23  adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting

24  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th

25  Cir. 2001).  The Court must look to the record as a whole and consider both adverse and supporting

26  evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the

27  Commissioner of Social Security are supported by substantial evidence, the District Court must accept

28  them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one

rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.    Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)    he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform

his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The five steps of the evaluation process are correctly outlined in the ALJ's decision and will not be repeated here.

### III.   Analysis and Findings

### A.   Whether the ALJ Erred in Rejecting Dr. LaTourette's Opinion

Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of the treating physician, Dr. LaTourette. Dr. LaTourette stated that Plaintiff could only sit and stand or walk for less than 2 hours in an 8 hour work day. AR 510. He stated that she could never reach overhead and could only reach in front of her body 20% of the workday. Dr. LaTourette indicated that Plaintiff would need to take 2 to 3 unscheduled breaks for 20 minutes during a work day, that she could occasionally lift less than 10 pounds, rarely lift 10 pounds, never lift or stoop, rarely crouch or climb stairs, and never climb ladders. AR 511.

Plaintiff disputes whether Dr. LaTourette solely relied on subjective statements in rendering his assessment of Plaintiff's residual functional capacity as alleged by the Commissioner. *Motion* (ECF No. 21), pg. 8. Plaintiff further argues that the ALJ ignored objective evidence. *Id.* at pg. 10. The Commissioner argues that the ALJ provided valid reasons for rejecting Dr. LaTourette's opinion because Dr. LaTourette indicated that Plaintiff did not have full motor strength in her lower extremities whereas Dr. Sherman observed that Plaintiff was able to ambulate without the use of a brace or assistive device. *Cross-Motion* (ECF No. 25), pg. 5. Plaintiff argues that the ALJ's decision should be based on the record as a whole and that it is not a valid reason to reject Dr. LaTourette's opinion because Dr. Sherman's objective observations do not support it. *Motion* (ECF No. 21), pg. 11.

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of

1   an examining physician.  If the opinion is contradicted by another examining physician, the ALJ must

2   provide specific and legitimate reasons for rejecting the medical opinion that are supported by

3   substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  *See also*

4   *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ afforded no weight to Dr.

5   LaTourette's opinion because (1) his opinion is based entirely on Plaintiff's subjective complaints and

6   is grossly inconsistent with the totality of the evidence; (2) progress notes and the longitudinal record

7   do not support Dr. LaTourette's opinion; and (3) there was no evidence that was adduced during Dr.

8   Sherman's examination to support a finding that Plaintiff had extreme limitations in standing and

9   walking or reaching.  AR 18.

10      The ALJ provided sufficient specific and legitimate reasons to support his finding that Dr.

11   LaTourette based his opinion on Plaintiff's subjective report of symptoms.  The ALJ relied on Dr.

12   Sherman's examination that indicated that Plaintiff was able to ambulate without an assistive device,

13   had a normal gait, and had no loss of strength, motor loss, or muscle wasting.  AR 18.  Although Dr.

14   LaTourette, treated Plaintiff from February 25, 2003 to November 2, 2012, there is significant evidence

15   in the record that he premised his opinion on Plaintiff's subjective complaints.  Dr. Sherman examined

16   Plaintiff on August 16, 2012 and on May 20, 2013.  The ALJ found that the objective medical record

17   did not support Dr. LaTourette's opinion and relied on Dr. Sherman's 2013 opinion to refute the

18   opinion of Dr. LaTourette.

19      Dr. Sherman first opined on August 16, 2012 that Plaintiff could sit, stand and walk for 4 hours

20   in an 8 hour day, frequently lift 10 pounds and occasionally lift 20 pounds.  AR 354.  Dr. Sherman then

21   stated on May 20, 2013 that Plaintiff was able to sit, stand, and walk for 6 hours during the course of an

22   8 hour day and did not require a cane, brace, or assistive device to ambulate.  She was able to frequently

23   lift 10 pounds and occasionally lift 20 pounds.  She was able to do occasional forward bending at the

24   waist and had no restrictions regarding reaching, pushing, pulling, grasping, and squatting.  AR 657.

25   The ALJ stated that he afforded Dr. Sherman's second opinion great weight because of his examination

26   of the claimant, his specialty in orthopaedic medicine, and his diagnostic testing.  AR 19.  The ALJ

27   rejected Plaintiff's subjective complaints as inconsistent with Dr. Sherman's observations and

28   examination findings.  The Court finds that the ALJ proposed clear and convincing reasons for rejecting

1    Dr. LaTourette's opinion and for accepting Dr. Sherman's.

2        **B.    Whether the ALJ Erred in Rejecting Plaintiff's Credibility**

3        If the claimant has presented sufficient evidence of an underlying physical or mental impairment

4    that could reasonably cause her symptoms, then, in the absence of evidence of malingering, the ALJ

5    must provide specific, clear and convincing reasons for rejecting the credibility of the claimant's

6    testimony regarding the severity of his pain or other symptoms. *Burrell v. Colvin*, 775 F.3d 1133,

7    1136–37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 1991) (en banc);

8    *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th

9    Cir. 1984)).  The ALJ must state the reasons why the testimony is unpersuasive, and must specifically

10    identify what testimony is credible and what testimony undermines the claimant's complaints.

11    *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (2009) (quoting *Morgan v. Comm'r of Soc.*

12    *Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

13        The ALJ may not reject a claimant's subjective complaints based solely on a lack of medical

14    evidence to fully corroborate the alleged severity of pain.  The rationale for this restriction is that pain

15    testimony may establish greater limitations than can medical evidence alone. *Burch v. Barnhart*, 400

16    F.3d 676, 680 (9th Cir. 2005) (citing SSR 96–7p (1996)).  In determining credibility, the ALJ may

17    engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for

18    truthfulness and inconsistencies in claimant's testimony. *Id.* (citing *Tonapetyan v. Halter,* 242 F.3d

19    1144, 1148 (9th Cir. 2001)).  The ALJ may also consider factors such as (1) the nature, location, onset,

20    duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g.,

21    movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects

22    of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional

23    restrictions; and (6) the claimant's daily activities. *Id.* (quoting *Bunnell*, 947 F.2d at 346)).  As these

24    factors indicate, medical records can provide relevant information that impeaches the credibility of

25    Plaintiff's testimony.  For example, medical records indicating that a claimant denied pain or reported

26    only mild pain in a particular body part, may properly be used to discount his later claims of severe pain

27    in that body part.

28        The ALJ set forth that Plaintiff's activities of daily living in conjunction with the medical

1  evidence demonstrating minimal abnormalities as reasons for his credibility determination. AR 20.

2  Plaintiff testified that she resided with her sister. AR 37. Her mother and sister did the grocery

3  shopping and cooking. Plaintiff watched her nephew by "keep[ing] an eye" on him. AR 38. She

4  would sometimes visit with friends. The ALJ explained that Plaintiff engaged in fairly limited daily

5  activities. However, Plaintiff's limited daily activities were not considered to be strong evidence in

6  favor of finding Plaintiff disabled because the limited daily activities could not be objectively verified

7  with any reasonable degree of certainty and it was difficult to attribute that degree of limitation to

8  Plaintiff's medical condition in view of the "relatively weak medical evidence." AR 20.

9       Plaintiff took Levistor, Presta, and Ibuprofen and Tramadol pain medication and she testified

10  that the pain medication upset her stomach. AR 248, 38. The ALJ found that although Plaintiff alleged

11  side effects from the medications, the medical records, specifically office treatment notes, did not

12  corroborate her allegations. AR 20. The ALJ found that there was evidence that Plaintiff was

13  noncompliant with treatment and did not engage in regular exercise as recommended by her treating

14  physician. AR 19. Further, the ALJ found that Plaintiff's "medically determinable impairments could

15  reasonably be expected to cause some of the alleged symptoms," but her statements concerning "the

16  intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 17. He

17  stated that the objective clinical findings did not support the degree of pain and functional limitations

18  alleged by Plaintiff. He stated that the Plaintiff had a steady work history, but that she stopped working

19  after her second surgery in 2011. He explained that while surgery suggested that symptoms were

20  genuine, it was offset by the fact that the record reflected that the surgeries were generally successful in

21  relieving the symptoms. AR 17. The ALJ, therefore, provided specific, clear and convincing reasons

22  for rejecting the credibility of the Plaintiff's statements and testimony regarding the severity of her pain.

23                                    **CONCLUSION**

24       The ALJ provided specific and legitimate reasons for rejecting Dr. LaTourette's opinion

25  regarding Plaintiff's residual functional capacity as being premised on Plaintiff's subjective complaints.

26  The ALJ rejected Plaintiff's subjective complaints and based his rejection on Dr. Sherman's

27  observations and examination findings. Accordingly,

28  . . .

13

1

## RECOMMENDATION

2        **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (ECF

3    No. 21) be **denied**, and that the Defendant's Cross-Motion to Affirm (ECF No. 25) be **granted**.

4

## NOTICE

5        Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

6    writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held

7    that the courts of appeal may determine that an appeal has been waived due to the failure to file

8    objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

9    held that (1) failure to file objections within the specified time and (2) failure to properly address and

10   brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

11   issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt*

12   *v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

13       DATED this 12th day of January, 2018.

14

15                                                    _____
                                         GEORGE FOLEY, JR.
16                                       United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28